## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MELVIN X. LINDSAY,      :
           :     Civil No. 1:11-CV-893
    **Plaintiff**    :
           :     **(Judge Caldwell)**
v.            :
           :     **(Magistrate Judge Carlson)**
JOHN WETZEL, et al.,    :
           :
    **Defendants**   :

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case.

This *pro se* civil rights action was initially brought by the plaintiff, a state prisoner, through the filing of a complaint on May 11, 2011. (Doc. 1.) In his complaint, Lindsay named the following current or former employees of the Department of Corrections ("DOC") or the Pennsylvania Board of Probation and Parole ("PBPP") as defendants: (1) DOC Secretary John Wetzel ("Secretary Wetzel"); (2) former DOC Secretary Jeffrey Beard ("Secretary Beard"); (3) DOC Chief Grievance Officer Dorina Varner ("Ms. Varner"); (4) PBPP Parole Board Member Benjamin Martinez ("Mr. Martinez"); (5) PBPP Chairwoman Catherine McVey ("Chairwoman McVey"); and (6) PBPP Examiner Deborah Cook ("Ms. Cook").

Lindsay then complained that, "for the last 14 plus years he has been arbitrarily, capriciously, and fraudulently denied adequate, proper and fair consideration for parole." (Doc. 1, ¶1.) While Lindsay brought his complaint pursuant to 42 U.S.C.

§1983, nowhere in the body of the complaint did he identify the specific federal legal or constitutional basis for his claims. Instead, it appeared from Lindsay's complaint that Lindsay is a sexual recidivist who was convicted of rape in 1983 and was sentenced to a term of three to six years. (Id., ¶¶5, 7.) Lindsay served the maximum on this sentence, (Id., ¶32), but later was returned to prison. Thus, according to Lindsay's complaint, in March 1995, Lindsay found himself re-incarcerated and was approved for release to a Community Corrections Center. In June 1995, Secretary Beard gave final approval for this decision, (Id., ¶11), however, before his release from prison, this decision was rescinded. (Id., ¶12.) Lindsay was then denied parole in October 1996, August 1998, January 2000, April 2001, May 2003, August 2004, February 2006 and June 2009. (Id., ¶¶15, 19, 21, 28, 29, 31, 36.)

Apparently, these parole denials stemmed in part form the fact that in August 2000, officials at the State Correctional Institution at Waynesburg, Pennsylvania ("SCI-Waynesburg") added completion of a sex offender treatment program ("SOTP") to Lindsay's prescriptive program plan. (Id., ¶24.) Lindsay has since refused to participate in any SOTP because–despite his rape conviction– he does not believe it is warranted. (Id., ¶¶26, 29, 30, 35, 37, 38, 40, 43, 44.) According to Lindsay's complaint, in May or June 2009, Lindsay was interviewed for parole by Mr. Martinez and Ms. Cook. (Id., ¶37.) This interview was terminated within five minutes because Lindsay refused to admit guilt to the sex offense and participate in the SOTP. Finally,

while they are identified as defendants, neither Secretary Wetzel nor Chairwoman McVey is alleged by the plaintiff to have taken any action with respect to Lindsay. As for defendant Varner, her sole involvement in this matters seems to have entailed denial of an administrative grievance filed by Lindsay at some time in this past.

As a *pro se* litigant the plaintiff was advised at this outset of this lawsuit by this court of his responsibilities in this litigation. Thus, on May 12, 2011 the district court entered its Standing Practice Order which informed the plaintiff of his responsibility to reply to defense motions, and warned him in clear and precise terms of the consequences which would flow from a failure to comply with briefing schedules on motions, stating:

> If the party opposing the motion does not file his or her brief and any evidentiary material within the 14-day time frame, Local Rule 7.6 provides that he or she shall be deemed not to oppose the moving party's motion. The motion may therefore be granted if: (1) the court finds it meritorious; or (2) the opposing party fails to comply with Local Rule 7.6 despite being ordered to do so by the court.

(Doc. 5, p.2.)

On October 1, 2012, the corrections defendants filed a motion to dismiss, or in the alternative for summary judgment motion in this case. (Docs. 34 and 38.) On May 30, 2012, the court granted Lindsay a 60 day extension of time in which to respond to this defense motion, extending the motion response deadline to July 23, 2012. (Doc. 41.) Lindsay did not file a timely response to the motion, but instead, filed a second, and untimely, request for extension of time on July 30, 2012. (Doc. 44.) This second

motion was also granted and Lindsay was ordered to respond to this motion no later than September 4, 2012. (Doc. 45.)

Despite receiving these two extensions of time, and being given this explicit notice from the court of his obligation to fully respond to defense motions, the plaintiff has not responded to this motion and the time for responding has now long since passed. Therefore, in the absence of any timely response by the plaintiff, we will deem the summary judgment motion to be ripe for resolution. For the reasons set forth below, we recommend that this motion to dismiss be granted.

## II. <u>Discussion</u>

### A. <u>Under The Rules of This Court This Motion to Dismiss Should Be Deemed Unopposed and Granted</u>

At the outset, under the Local Rules of this court the plaintiff should be deemed to concur in this summary judgment motion, since the plaintiff has failed to timely oppose the motion, or otherwise litigate this case. This procedural default completely frustrates and impedes efforts to resolve this matter in a timely and fair fashion, and under the rules of this court warrants dismissal of the action, since Local Rule 7.6 of the Rules of this court imposes an affirmative duty on the plaintiff to respond to motions and provides that:

> Any party opposing any motion, other than a motion for summary judgment, shall file a brief in opposition within fourteen (14) days after service of the movant's brief, or, if a brief in support of the motion is not

required under these rules, within seven (7) days after service of the motion. *Any party who fails to comply with this rule shall be deemed not to oppose such motion.* Nothing in this rule shall be construed to limit the authority of the court to grant any motion before expiration of the prescribed period for filing a brief in opposition. A brief in opposition to a motion for summary judgment and LR 56.1 responsive statement, together with any transcripts, affidavits or other relevant documentation, shall be filed within twenty-one (21) days after service of the movant's brief.

Local Rule 7.6 (emphasis added).

It is now well-settled that "Local Rule 7.6 can be applied to grant a motion to dismiss without analysis of the complaint's sufficiency 'if a party fails to comply with the [R]ule after a specific direction to comply from the court.' <u>Stackhouse v. Mazurkiewicz</u>, 951 F.2d 29, 30 (1991)." <u>Williams v. Lebanon Farms Disposal, Inc.</u>, No. 09-1704, 2010 WL 3703808, *1 (M.D. Pa. Aug.26, 2010). In this case the plaintiff has not complied with the Local Rules, or this court's orders, by filing a timely response to this motion. Therefore, these procedural defaults by the plaintiff compel the court to consider:

[A] basic truth: we must remain mindful of the fact that "the Federal Rules are meant to be applied in such a way as to promote justice. *See* Fed.R.Civ.P. 1. Often that will mean that courts should strive to resolve cases on their merits whenever possible. However, justice also requires that the merits of a particular dispute be placed before the court in a timely fashion ...." <u>McCurdy v. American Bd. of Plastic Surgery</u>, 157 F.3d 191, 197 (3d Cir.1998).

<u>Lease v. Fishel</u>, 712 F. Supp. 2d 359, 371 (M.D.Pa. 2010).

With this basic truth in mind, we acknowledge a fundamental guiding tenet of our legal system. A failure on our part to enforce compliance with the rules, and impose the sanctions mandated by those rules when the rules are repeatedly breached, "would actually violate the dual mandate which guides this court and motivates our system of justice: 'that courts should strive to resolve cases on their merits whenever possible [but that] justice also requires that the merits of a particular dispute be placed before the court in a timely fashion'." Id. Therefore, we are obliged to ensure that one party's refusal to comply with the rules does not lead to an unjustified prejudice to those parties who follow the rules.

These basic tenets of fairness apply here. In this case, the plaintiff has failed to comply with Local Rule 7.6 by filing a timely response to the summary judgment motion. These failures now compel us to apply the sanction called for under Rule 7.6 and deem the plaintiff to not oppose this motion.

### B. Dismissal of this Case Is Also Warranted Under Rule 41

Beyond the requirements imposed by the Local Rules of this court, Rule 41(b) of the Federal Rules of Civil Procedure authorizes a court to dismiss a civil action for failure to prosecute, stating that: "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). Decisions regarding dismissal of actions for failure

to prosecute rest in the sound discretion of the court, and will not be disturbed absent an abuse of that discretion. Emerson v. Thiel College, 296 F.3d 184, 190 (3d Cir. 2002)(citations omitted). That discretion, however, while broad is governed by certain factors, commonly referred to as Poulis factors. As the United States Court of Appeals for the Third Circuit has noted:

> To determine whether the District Court abused its discretion [in dismissing a case for failure to prosecute], we evaluate its balancing of the following factors: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863, 868 (3d Cir.1984).

Emerson, 296 F.3d at 190.

In exercising this discretion "there is no 'magic formula' that we apply to determine whether a district court has abused its discretion in dismissing for failure to prosecute." Lopez v. Cousins, No. 10-1877, 2011 WL 2489897, *3 (3d Cir. June 23, 2011)(quoting Briscoe v. Klem, 538 F.3d 252 (3d Cir. 2008)) Therefore, "[i]n balancing the Poulis factors, [courts] do not [employ] a . . . 'mechanical calculation' to determine whether a district court abused its discretion in dismissing a plaintiff's case. Mindek v. Rigatti, 964 F.2d 1369, 1373 (3d Cir.1992)." Briscoe v. Klaus, 538 F.3d at 263. Consistent with this view, it is well-settled that " 'no single Poulis factor

is dispositive,' Ware, 322 F.3d at 222, [and it is] clear that 'not all of the Poulis factors need be satisfied in order to dismiss a complaint.' Mindek, 964 F.2d at 1373." Briscoe v. Klaus, 538 F.3d at 263. Moreover, recognizing the broad discretion conferred upon the district court in making judgments weighing these six factors, the court of appeals has frequently sustained such dismissal orders where there has been a pattern of dilatory conduct by a *pro se* litigant who is not amenable to any lesser sanction. See, e.g., Emerson v. Thiel College, supra; Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007); Reshard v. Lankenau Hospital, 256 F. App'x 506 (3d Cir. 2007); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007).

In this case, a dispassionate assessment of the Poulis factors weighs heavily in favor of dismissing this action. At the outset, a consideration of the first Poulis factor, the extent of the party's personal responsibility, shows that the delays in this case are entirely attributable to the plaintiff, who has failed to abide by court orders, and has otherwise neglected to litigate this case, or respond to defense motions.

Similarly, the second Poulis factor– the prejudice to the adversary caused by the failure to abide by court orders–also calls for dismissal of this action. Indeed, this factor–the prejudice suffered by the party seeking sanctions–is entitled to great weight and careful consideration. As the United States Court of Appeals for the Third Circuit has observed:

> "Evidence of prejudice to an adversary would bear substantial weight in support of a dismissal or default judgment." Adams v. Trustees of N.J. Brewery Employees' Pension Trust Fund, 29 F.3d 863, 873-74 (3d Cir.1994) (internal quotation marks and citation omitted). Generally, prejudice includes "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party." Id. at 874 (internal quotation marks and citations omitted). . . . However, prejudice is not limited to "irremediable" or "irreparable" harm. Id.; see also Ware v. Rodale Press, Inc., 322 F.3d 218, 222 (3d Cir.2003); Curtis T. Bedwell & Sons, Inc. v. Int'l Fidelity Ins. Co., 843 F.2d 683, 693-94 (3d Cir.1988). It also includes "the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy." Ware, 322 F.3d at 222.

Briscoe v. Klaus, 538 F.3d at 259-60.

In this case the plaintiff's failure to litigate this claim or comply with court orders now wholly frustrates and delays the resolution of this action. In such instances, the defendants are plainly prejudiced by the plaintiff's continuing inaction and dismissal of the case clearly rests in the discretion of the trial judge. Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007) (failure to timely serve pleadings compels dismissal); Reshard v. Lankenau Hospital, 256 F. App'x 506 (3d Cir. 2007) (failure to comply with discovery compels dismissal); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007) (failure to file amended complaint prejudices defense and compels dismissal).

When one considers the third Poulis factor-the history of dilatoriness on the plaintiff's part–it becomes clear that dismissal of this action is now appropriate. In

this regard, it is clear that "'[e]xtensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response . . . , or consistent tardiness in complying with court orders.' Adams, 29 F.3d at 874." Briscoe v. Klaus, 538 F.3d at 260-61 (some citations omitted). Here, the plaintiff has allegedly failed to exhaust his administrative remedies before filing this lawsuit and now has failed to respond to a defense motion which highlights this earlier procedural failure. The plaintiff has also failed to timely file pleadings, and has not complied with orders of the court. Thus, the plaintiff's conduct displays "[e]xtensive or repeated delay or delinquency [and conduct which] constitutes a history of dilatoriness, such as consistent non-response . . . , or consistent tardiness in complying with court orders." Adams, 29 F.3d at 874.

The fourth Poulis factor–whether the conduct of the party or the attorney was willful or in bad faith–also cuts against the plaintiff in this case. In this setting we must assess whether this conduct reflects mere inadvertence or willful conduct, in that it involved "strategic," "intentional or self-serving behavior," and not mere negligence. Adams v. Trs. of N.J. Brewery Emps.' Pension Trust Fund, 29 F.3d 863, 875 (3d Cir.1994). At this juncture, when the plaintiff has failed to comply with instructions of the court directing the plaintiff to take specific actions in this case, and has violated the Local Rules, the court is compelled to conclude that the plaintiff's

actions are not accidental or inadvertent but instead reflect an intentional disregard for this case and the court's instructions.

While Poulis also enjoins us to consider a fifth factor, the effectiveness of sanctions other than dismissal, cases construing Poulis agree that in a situation such as this case, where we are confronted by a *pro se* litigant who will not comply with the rules or court orders, lesser sanctions may not be an effective alternative. See, e.g., Briscoe v. Klaus, 538 F.3d 252, 262-63 (3d Cir. 2008); Emerson, 296 F.3d at 191. This case presents such a situation where the plaintiff's status as a *pro se* litigant severely limits the ability of the court to utilize other lesser sanctions to ensure that this litigation progresses in an orderly fashion. In any event, by entering our prior orders, and counseling the plaintiff on his obligations in this case, we have endeavored to use lesser sanctions, but to no avail. The plaintiff still declines to obey court orders, and otherwise ignores his responsibilities as a litigant. Since lesser sanctions have been tried, and have failed, only the sanction of dismissal remains available to the court.

Finally, under Poulis we are cautioned to consider one other factor, the meritoriousness of the plaintiff's claims. In our view, however, consideration of this factor cannot save this particular plaintiff's claims, since the plaintiff is now wholly non-compliant with his obligations as a litigant. The plaintiff cannot refuse to address

the merits of his claims, and then assert the untested merits of these claims as grounds for denying a motion to sanction him. Furthermore, it is well-settled that " 'no single Poulis factor is dispositive,' Ware, 322 F.3d at 222, [and it is] clear that 'not all of the Poulis factors need be satisfied in order to dismiss a complaint.' Mindek, 964 F.2d at 1373." Briscoe v. Klaus, 538 F.3d at 263. Therefore, the untested merits of the non-compliant plaintiff's claims, standing alone, cannot prevent imposition of sanctions.

In any event, as discussed below, the plaintiff's claims clearly fail on their merits, yet another factor which favors dismissal of this action. The legal flaws inherent in these claims are discussed separately below.

## C.    The Plaintiff's Claims Fail on Their Merits

In this case a dispassionate merits assessment reveals that Lindsay's complaint fails on multiple grounds. At the outset, many of the allegations set forth in the current *pro se* complaint fail to state claims within the period of the statute of limitations which governs these federal civil rights complaints. In particular, all of Lindsay's claims involving conduct occurring between 1996 and 2009 appears on the face of the complaint to be time-barred. In this regard, when conducting a screening review of a *pro se* complaint under 28 U.S.C. § 1915, a court may consider whether the complaint is barred under the applicable statute of limitations. As the United

States Court of Appeals for the Third Circuit recently explained when it affirmed the

screening dismissal of a *pro se* complaint on statute of limitations grounds:

> Civil rights claims are subject to the statute of limitations for personal
> injury actions of the pertinent state. Thus, Pennsylvania's two year
> statutory period applies to [these] claims. See Lake v. Arnold, 232 F.3d
> 360, 368 (3d Cir.2000). The limitations period begins when the plaintiff
> knows or had reason to know of the injury forming the basis for the
> federal civil rights action. Gera v. Commonwealth of Pennsylvania, 256
> Fed.Appx. 563, 564-65 (3d Cir.2007). Although we have not addressed
> the issue in a precedential decision, other courts have held that although
> the statute of limitations is an affirmative defense, district court may *sua
> sponte* dismiss a complaint under § 1915(e) where the defense is obvious
> from the complaint and no development of the factual record is required.
> See  Fogle v. Pierson, 435 F.3d 1252, 1258 (10th Cir.2006); see also
> Eriline Co. S.A. v. Johnson, 440 F.3d 648, 656-57 (4th Cir.2006)
> (citation omitted)(finding that a district court's screening authority under
> § 1915(e) "differentiates in forma pauperis suits from ordinary civil suits
> and justifies an exception to the general rule that a statute of limitations
> defense should not be raised and considered sua sponte.").

Smith v. Delaware County Court 260 F. App'x. 454, 455 (3d Cir. 2008); see also

Jackson v. Fernandez, No. 08-5694, 2009 WL 233559 (D.N.J. Jan. 26, 2009); Hurst

v. City of Dover, No. 04-83, 2008 WL 2421468 (D. Del. June 16, 2008). Applying

these standards, the court finds that many of the allegations in this *pro se* complaint

are apparently subject to dismissal on statute of limitations grounds. Specifically, this

complaint–which alleges misconduct by government actors beginning in 1996 and

concluding 14 years later in 2009–was first filed on May 11, 2011, more than two

years after the events complained of by the plaintiff. Therefore, any allegations set

forth in the complaint which pre-date May 2009, would be time-barred by the two year statute of limitations generally applicable to civil rights matters.

It is well-settled that claims brought pursuant to 42 U.S.C. § 1983 are subject to the state statute of limitations for personal injury actions. Wilson v. Garcia, 471 U.S. 261, 266-67 (1985). In Pennsylvania, the statute of limitations for a personal injury action is two years. 42 Pa.C.S.A. § 5524. A cause of action accrues for statute of limitations purposes when the plaintiff knows or has reason to know of the injury that constitutes the basis of the cause of action. Sameric Corp. of Delaware, Inc. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998); see also, Nelson v. County of Allegheny, 60 F.3d 1010 (3d Cir. 1995). While this two-year limitations period may be extended based upon a continuing wrong theory, a plaintiff must make an exacting showing to avail himself of this grounds for tolling the statute of limitations. For example, it is well settled that the "continuing conduct of [a] defendant will not stop the ticking of the limitations clock [once] plaintiff obtained requisite information [to state a cause of action]. On discovering an injury and its cause, a claimant must choose to sue or forego that remedy." Barnes v. American Tobacco Co., 161 F.3d 127, 154 (3d Cir. 1998) (quoting Kichline v. Consolidated Rail Corp., 800 F. 2d 356, 360 (3d Cir. 1986)). See also Lake v. Arnold, 232 F.3d 360, 266-68 (3d Cir. 2000). Instead:

The continuing violations doctrine is an "equitable exception to the timely filing requirement." West v. Philadelphia Elec. Co., 45 F.3d 744, 754 (3d Cir.1995). Thus, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1295 (3d Cir.1991). In order to benefit from the doctrine, a plaintiff must establish that the defendant's conduct is "more than the occurrence of isolated or sporadic acts." West, 45 F.3d at 755 (quotation omitted). Regarding this inquiry, we have recognized that courts should consider at least three factors: (1) subject matter-whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency-whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence-whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate. See id. at 755 n. 9 (citing Berry v. Board of Supervisors of Louisiana State Univ., 715 F.2d 971, 981 (5th Cir.1983)). The consideration of "degree of permanence" is the most important of the factors. See Berry, 715 F.2d at 981.

Cowell v. Palmer Township. 263 F.3d 286, 292 (3d Cir. 2001)

In this case, Lindsay complains about parole decisions that took place over a 14 year period from 1996 to 2009. However, the factual narrative set forth in the complaint plainly reveals that Lindsay immediately attached a high degree of significance and permanence to these events set forth in this complaint. Thus, the plaintiff recites well-pleaded facts in his complaint which clearly reveal that, to the extent these events entailed violations of the plaintiff's constitutional rights those

violations were known and recognized by Lindsay when they occurred, more than a decade ago. Furthermore, these events plainly had the degree of significance and permanence which should have triggered the plaintiff's awareness of his duty to assert his rights. Therefore, in this case a straightforward application of the two-year statute of limitations appears to compel dismissal of the claims which pre-date May 2009 as untimely.

Lindsay's complaint also names various supervisory prison and parole officials as defendants but is bereft of well–pleaded allegations giving rise to any form of supervisory liability. In their current form, these supervisory liability claims fail as a matter of law. In considering claims brought against supervisory officials arising out of alleged constitutional violations, the courts recognize that supervisors may be exposed to liability only in certain, narrowly defined, circumstances.

At the outset, it is clear that a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was an agency supervisor when the incidents set forth in the complaint occurred. Quite the contrary, to state a constitutional tort claim the plaintiff must show that the supervisory defendants actively deprived him of a right secured by the Constitution. Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine v.Thiboutot, 448 U.S. 1 (1980). Constitutional tort liability is personal in nature and can only follow personal

involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice.

Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).

In particular, with respect to prison supervisors it is well-established that:

> "A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988).

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

As the Supreme Court has observed:

> Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. . . . See Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); see also Dunlop v. Munroe, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's liability "will only result from his own neglect in not properly superintending the discharge" of his subordinates' duties); Robertson v. Sichel, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties"). Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.

Ashcroft v. Iqbal,  129 S.Ct. 1937, 1948 (2009).

Applying these benchmarks, courts have frequently held that, in the absence of evidence of supervisory knowledge and approval of subordinates' actions, a plaintiff may not maintain an action against supervisors based upon the misdeeds of their subordinates. O'Connell v. Sobina, No. 06-238, 2008 WL 144199, * 21 (W.D. Pa. Jan. 11, 2008); Neuburger v. Thompson, 305 F. Supp. 2d 521, 535 (W. D. Pa. 2004). Rather, "[p]ersonal involvement must be alleged and is only present where the supervisor directed the actions of supervisees or actually knew of the actions and acquiesced in them. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988)." Jetter v. Beard, 183 F. App'x 178, 181 (3d Cir. 2006).

Here, as to these supervisory defendants, the complaint bases liability, in large measure, on their supervisory status without further, specific and well-pleaded fact describing their involvement in this matter. This cursory style of pleading is plainly inadequate to state a claim against a prison supervisor and compels dismissal of these defendants. Hudson v. City of McKeesport, 241 F. App'x 519 (3d Cir. 2007)(affirming dismissal of defendant who was only named in caption of case.)

Nor can an inmate sustain constitutional tort against supervisors based solely upon assertions that the officials failed to adequately respond to his past grievances. Inmates do not have a constitutional right to a prison grievance system. See Jones, 433 U.S. at 137-138; Speight v. Sims, No. 08-2038, 283 F. App'x 880, 2008 WL

2600723 at *1 (3d. Cir. June 30, 2008) (citing <u>Massey v. Helman</u>, 259 F.3d 641, 647

(7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty

interest on a prisoner."). Consequently, dissatisfaction with a response to an inmate's

grievances does not support a constitutional claim. <u>See also</u> <u>Alexander v. Gennarini</u>,

144 F. App'x. 924 (3d Cir. 2005) (involvement in post-incident grievance process not

a basis for § 1983 liability); <u>Pryor-El v. Kelly</u>, 892 F. Supp. 261, 275 (D. D.C. 1995)

(because prison grievance procedure does not confer any substantive constitutional

rights upon prison inmates, the prison officials' failure to comply with grievance

procedure is not actionable). <u>See also</u> <u>Cole v. Sobina</u>, No. 04-99J, 2007 WL 4460617,

at *5 (W.D. Pa. Dec. 19, 2007) ("[M]ere concurrence in a prison administrative appeal

process does not implicate a constitutional concern."). As the United States Court of

Appeals for the Third Circuit recently observed when disposing of a similar claim by

another inmate:

> Several named defendants, such as the Secretaries of the Department of
> Corrections or Superintendents, were named only for their supervisory
> roles in the prison system. The District Court properly dismissed these
> defendants and any additional defendants who were sued based on their
> failure to take corrective action when grievances or investigations were
> referred to them. <u>See</u> <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d
> Cir.1988) (defendant in a civil rights action must have personal
> involvement in the alleged wrongs; liability cannot be predicated solely
> on the operation of *respondeat superior* ); <u>see also</u> <u>Antonelli v. Sheahan</u>,
> 81 F.3d 1422, 1430 (7th Cir.1996) (state's inmate grievance procedures
> do not give rise to a liberty interest protected by the Due Process Clause)

Pressley v. Beard, 266 F. App'x 216, 218 (3d Cir. 2008).

In this case, fairly construed, Lindsay's claims against defendants Wetzel, McVey, and Varner presently consist of little more than assertions of *respondeat superior* liability, coupled with dissatisfaction with their processing of this inmate's past grievances, assertions which as a matter of law do not suffice to state a constitutional tort claim. Therefore, these defendants are entitled to be dismissed from this case.

More fundamentally, Lindsay's complaint fails on its merits. The apparent gravamen of Lindsay's complaint is the premise that his constitutional rights have been violated in some fashion in a series of adverse parole decisions, all of which have been based upon the refusal of this sexual recidivist to undergo sex offender treatment. To the extent that Lindsay attempts to make such a claim, he treads on familiar but barren legal grounds. Indeed, sexual criminal recidivists like Lindsay frequently contest the state parole board's judgment that they present a continuing risk of sexually predatory conduct, arguing that this parole board action offends constitutional *ex post facto* principles. With respect to such offenders, the guiding legal standards can be simply stated:

> The Ex Post Facto Clause states that "[n]o State shall ... pass any ... ex post facto Law." U.S. Const. art. I, § 10, cl.1. The Clause applies to a statute or policy change which "alters the definition of criminal conductor increases the penalty by which a crime is punishable." The ex

post facto inquiry has two prongs: (1) whether there was a change in the law or policy which has been given retrospective effect, and (2) whether the offender was disadvantaged by the change. To violate the Ex Post Facto Clause, a retroactive change in the law or policy must create a "sufficient risk of increasing the measure of punishment attached to the covered crimes"; a "speculative and attenuated possibility of ... increasing the measure of punishment" is not enough.

Richardson v. Pa. Bd. of Probation and Parole, 423 F.3d 282, 287-88 (3d Cir. 2005)(citations omitted).

As the United States Court of Appeals for the Third Circuit has recently observed when considering, and rejecting, an *ex post facto* challenge by a Pennsylvania prisoner who, like Farmer, was a convicted sex offender:

> The Ex Post Facto Clause "applies to a statutory or policy change that 'alters the definition of criminal conduct or increases the penalty by which a crime is punishable.' " Mickens-Thomas I, 321 F.3d at 383 (quoting Cal. Dep't of Corr. v. Morales, 514 U.S. 499, 506 n. 3, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995)). "The ex post facto inquiry has two prongs: (1) whether there was a change in the law or policy which has been given retrospective effect, and (2) whether the offender was disadvantaged by the change." Richardson v. Pa. Bd. of Prob. & Parole, 423 F.3d 282, 287-88 (3d Cir.2005). The Supreme Court has noted that "[r]etroactive changes in laws governing parole of prisoners, in some instances, may be violative of [the Ex Post Facto Clause]." Garner v. Jones, 529 U.S. 244, 250, 120 S.Ct. 1362, 146 L.Ed.2d 236 (2000). This is because "[a]n adverse change in one's prospects for release [through parole] disadvantages a prisoner just as surely as an upward change in the minimum duration of sentence." Mickens-Thomas I, 321 F.3d at 392.

Newman v. Beard, 617 F.3d 775, 784 (3d Cir. 2010).

With respect to the second crucial component of an *ex post facto* claim– whether the offender was disadvantaged by the change in law:

> To proceed with his Ex Post Facto claim, [a prisoner] must also . . . allege that he was "disadvantaged by the change [in law or policy]." Richardson, 423 F.3d at 288. [A plaintiff] "must show that as applied to his own sentence the law created a significant risk of increasing his punishment." Garner, 529 U.S. at 255, 120 S.Ct. 1362. "[A] 'speculative and attenuated possibility of ... increasing the measure of punishment' is not enough" for Newman to meet his burden. Richardson, 423 F.3d at 288 (alteration in original) (quoting Morales, 514 U.S. at 509, 115 S.Ct. 1597).

Id. at 785. This required showing has a particular and specific meaning in a case like this, where the courts consider an *ex post facto* claim made by a convicted sex offender who refuses to acknowledge responsibility for his violent predatory behavior. In this setting, the court of appeals has held that:

> The Supreme Court has recognized that because "most offenders will eventually return to society, [a] paramount objective of the corrections system is the rehabilitation of those committed to its custody." Pell, 417 U.S. at 823, 94 S.Ct. 2800. Inasmuch as rehabilitation is a legitimate penological objective and the Supreme Court is satisfied that recognition of one's responsibility for past offenses is a "critical first step" toward rehabilitation, McKune, 536 U.S. at 33, 122 S.Ct. 2017, [a prisoner who refuses to acknowledge responsibility for a sex crime] cannot show that the Parole Board's alleged retroactive application of [some law] "created a significant risk of increasing his punishment . . . ." Accordingly, the District Court properly dismissed [the prisoner's] *Ex Post Facto* claim.

Id. at 786.

Applying these guideposts, cases which have examined *ex post facto* claims brought by prisoners have consistently rejected attacks on individual parole decisions that are based upon some alleged *ex post facto* application of state parole rules.  See, e.g., Porter v. Ray, 461 F.3d 1315 (11th Cir. 2006); McGoy v. Ray, 264 F.App'x 876 (11th Cir. 2006); Patterson v. Kaine, No. 08-490, 2010 WL 883807 (E.D. Va. March 11, 2010); Ridenour v. Collins, 692 F.Supp.2d 827 (S.D. Ohio 2010); Smythe v. Diguglielmo, No. 05-5869, 2007 WL 2972586 (E.D. Pa. Oct. 10, 2007); Smith v. Holden, No. 04-4075, 2006 WL 3930851 (W.D. Mo. Sept. 12, 2006); Bottom v. Pataki, 03-975, 2006 WL 2265408 (N.D.N.Y. Aug. 7, 2006); Carter v. Muller, 45 F.Supp.2d 453 (E,.D. Pa. 1999); Carter v. Ridge, No. 97-5414, 1998 WL 221035 (E.D. Pa. May 5, 1998).  These cases have rejected such *ex post facto* claims both on summary judgment, see, e.g., Porter v. Ray, 461 F.3d 1315 (11th Cir. 2006); McGoy v. Ray, 264 F.App'x 876 (11th Cir. 2006), and on motions to dismiss.  See, e.g., Patterson v. Kaine, No. 08-490, 2010 WL 883807 (E.D. Va. March 11, 2010); Bottom v. Pataki, 03-975, 2006 WL 2265408 (N.D.N.Y. Aug. 7, 2006).  Given this settled caselaw, Lindsay's vaguely articulated constitutional claims relating to the failure of parole officials to reward his refusal to undergo sex offender treatment simply fail as a matter of law.

In sum, this merits analysis reveals that this summary judgment motion is meritorious. Therefore, we find that all of the Poulis factors call for dismissal of this case.

Having concluded that this *pro se* complaint is flawed in a profound way, we recognize that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless it is clear that granting further leave to amend would be futile, or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). In this case, the current complaint fails to state a viable civil rights cause of action, the factual and legal grounds proffered in support of this complaint make it clear that the plaintiff has no right to relief, and the plaintiff has declined to respond to court orders, or otherwise litigate these claims. On these facts, we conclude that granting further leave to amend would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Therefore it is recommended that the complaint be dismissed without further leave to amend.

### III.  **Recommendation**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendants' Motion to Dismiss or in the Alternative for Summary Judgment  (Doc. 34), be GRANTED and the plaintiff's complaint be dismissed.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 4th day of February 2013.

*S/Martin C.  Carlson*
Martin C. Carlson
United States Magistrate Judge